Your Honors, thank you. As Judge, you mentioned, I am Ryan McFarland, counsel for Scentsy, and Scentsy submits that it has introduced sufficient evidence to raise genuine issues of material fact as to both its trade dress and copyright claims in this case, and so we request of the court an opportunity to address those claims to a jury and have a trial and merits. As to Scentsy's trade dress claims, the district court resolved those claims against Scentsy based on the misapplication of one doctrine, that is the doctrine of aesthetic functionality. The district court, to be sure, did not use the words aesthetic functionality. What it instead said was that the beauty of the products is a utilitarian feature for scented wax warmers. In other words, because Scentsy designs its home decor products to be aesthetically pleasing, the court held that its trade dress or its claimed trade dress was functional. But we submit that that is an error because notwithstanding the name aesthetic functionality, the aesthetics of the thing really have little to do with whether it's functional. As this court said in 2001 in this Klix-Billiards case, trade dress cannot be both functional and purely aesthetic. Note the touchstone for aesthetic functionality is whether the claimed trade dress, giving protection to that claimed trade dress, would prohibit or materially limit alternative designs available to competitors, in this case like Harmony Brands. As this court said in 2006 in Automotive Gold, in the case of the claim of aesthetic functionality, the test inquires whether protection of the feature as a trademark would impose a significant non-reputation related competitive disadvantage. No such disadvantage exists here because the district court also found there is undoubtedly a wide range of expression for scented wax warmers because the combination of other design elements is almost limitless. So whatever else we might say about Sensi's claimed trade dress, it is not aesthetically functional because there is, quote, a limitless or almost limitless supply of other design elements available to Harmony Brands. And as that was the sole basis for the grant of summary judgment, we would ask the court to reverse. As to the copyright claims, Sensi believes that this is one of the rare cases in which there is ample direct evidence of copying such that this can be and should be a jury case. Examples of the direct evidence of copying include the following. One of Harmony's designers said in an early email regarding his warmer design that, quote, it was based a bit on the tall version that Sensi is doing currently. Was that referring to the Coca-Cola? Your Honor, it's unclear which one that was referring to. It was an initial warmer design that does not appear to be expressed. There was a photograph attached. It's in the record. It does not appear to be one of the warmers. It appears to be similar to Harmony's Zebra Warmer, but the email does not make clear. As to the Coca-Cola Warmer, which is one of the copyright warmers, one of Harmony's designers actually sent an actual Coca-Cola Warmer to Harmony's Chinese counterpart with instructions to, quote, match the Sensi sample that he had sent that had a similar type of ceramic body to Harmony's ancient. We know from the record that Harmony's Chinese manufacturers actually used the Coca-Cola as a model for Harmony's ancient. Took photographs of the prototype Harmony ancient and the Sensi Coca-Cola and sent them back to Harmony Brands for review in Utah. In fact, one of Harmony's designers was so concerned about the similarities that they had to make additional changes to the ancient warmer, including changing the color of the lid to black, et cetera. As to Sendai, another warmer that is the subject of Sensi's copyright claims, one of Harmony's former designers testified in deposition that Harmony's cityscape nightlife and bamboo warmers were based on the Sensi Sendai Warmer. And what has become for Sensi the summary of this case, and perhaps in Sensi's view the most egregious example, is that Ben Chase, the owner or an owner of Harmony Brands, prepared a PowerPoint presentation for current and potential customers. These would be large-scale retail buyers. In that PowerPoint, on one of the slides, he stated the following. Through our design teams in the U.S. and Asia, we have become the Sensi of retail. So not only is Sensi aggrieved by the fact that Harmony Brands was copying Sensi's warmers, as Sensi sees it, but that it was boasting, it was actually advertising its copying efforts as a reason for buyers to purchase the Harmony Brands product. We submit that that is direct evidence of copying and that that statement has significant implications for Sensi's trade dress claims. Now Harmony may argue here, as it did below, that it has sufficiently changed its warmer's design such that there is no protectable expression of Sensi's exhibited in the Harmony warmers. That may or may not be true, but for purposes of summary, for this appeal rather, we submit that that is a question for the jury, not a question for the court on summary judgment. Now to the extent this court has any concerns or reservations about Sensi's evidences of direct copying, we invite the court to review the district court's application of the extrinsic and intrinsic tests under the more commonly used indirect evidence of copying regime. Everyone seems to agree that the extrinsic test, and I say seems to agree because I don't think that's the issue on appeal, I think it's very clear under the law, that the extrinsic test is the only test employed by the court at summary judgment. The intrinsic test is only employed by a jury following trial. The dispute I think at this appeal, or this stage, is whether the district court impermissibly engaged in that intrinsic test. We submit that the court did do that, most obviously because that's what it said it was doing. The district court first identified the different extrinsic and intrinsic tests. The court then engaged in the extrinsic test, which as I've articulated, and I think it's an accurate representation of this court's law, is fundamentally a three-step process. The first involves an examination of the ideas to determine, or excuse me, the examination of the works to determine whether they represent the same idea. Criteria for that examination includes the type of artwork involved, the materials used, the subject matter, the setting for the subject. Of course here both parties make ceramic wax warmers of almost identical dimensions. They're used in the same settings, homes, offices, et cetera, as home decor and ultimately to fragrant a room. They're sold a bit differently, aren't they? They are sold different. That's right, Your Honor, but I don't think that that has application in the copyright context, which we're talking about. But that is accurate. The court then engaged in the second step of the extrinsic test. That is an evaluation of whether the creative elements of the work, as articulated by the plaintiff, are protectable. Unprotectable elements are filtered out. Now the court clearly engaged in this step of the extrinsic test. That is, it filtered out as unprotectable the use of a lid, a generic lid, the use of a base, and the use of holes in the body of the warmer. Sensi agrees with that. That is to say, Sensi claims no exclusive right to the use of a lid, a base, or holes, or even all three in combination. Sensi does claim an exclusive right to its particular shapes, embellishments, designs, etc., of its lids, bases, and warmers. But the point here is the district court engaged in this step. And then the district court engaged in what I understand to be the final step of the extrinsic test, which is once the court determines there are protectable portions, the court then must determine whether those protectable portions are entitled to broad or narrow copyright protection. And here the district court said, quote, all four warmers in this case shall be afforded broad copyright protection against substantially similar works. Now at that point, the court's job on summary judgment was completed. The court should have denied summary judgment and allowed the case to go to trial. The fact that the court did not stop there is itself further evidence that the court impermissibly engaged in the intrinsic test. In fact, what the court said was that it, quote, must now turn to the intrinsic prong of the test. And what follows is a heading entitled Intrinsic Component. And then three pages of an evaluation of each of the works as a whole. The court stated, at the intrinsic stage, we ask, and I pause parenthetically, to note that that is the error. The district court does not ask anything of the intrinsic test at the summary judgment stage. And yet the court said, at the intrinsic stage, we ask whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar. That, we submit, was an error. It is reversible error. And combined with the error on trade dress, that is, the misapplication of aesthetic functionality, those form the basis for why this court should reverse the district court's decision  And counsel, I realize those are your primary arguments presented to reverse the summary judgment. But did you want to also address the issue on the award of attorney fees? Your Honor, I did. I was going to reserve some of that, but I'll address the court's question directly. First of all, it's fundamentally most important for Sensee to obtain an opportunity to protect its intellectual property. And if this court reverses the summary judgment decision, then I think the attorney's fees decision is automatically reversed, because at least at this juncture, Harmony Brands would not be the prevailing party. But to address the attorney's fees issue in isolation, we would submit that this is not an exceptional case. If you win on the summary judgment, you don't have to worry about the attorney fees. That's our primary issue or argument. If you were to lose on that, then I wanted to know if you wanted to address that now or wait for your rebuttal. Your Honor, I'm happy to address it now. First of all, we believe this is not an exceptional case. The aesthetic, the misapplication of the aesthetic functionality doctrine cannot create an exceptional case. Secondly, the district court had no jurisdiction to expand its summary judgment decision at the attorney's fees phase so as to find an exceptional case. And yet that's what the court did. The court held that this case was exceptional because it was groundless. And that it was groundless because, for the first time, the court expressed concern about Sensee's evidence as to secondary meaning and likelihood of confusion. But, of course, by that point, Sensee had already appealed the only issue present in summary judgment and had, in fact, filed its brief on appeal. I might have missed this in reviewing papers, but if you've got a total attorney fee of $365,900 or something and $400,000 plus in costs. I believe it was a collective total of just under $400,000. Okay. How much of that relates to copyright and how much to the Lanham Act trade dress? Is that broken out in the record? It is not, Your Honor. And the district court addressed that in some respect. It essentially said that because it was awarding fees under both claims, that there was no need to apportion out. And so the court did not apportion out the fees. Okay. So if we were to affirm on the summary judgment but reverse on the attorney fees on the Lanham Act on the exceptional case issue, then it would have to be remanded for that to be decided. It would, Your Honor. But we don't get to that at all. That's right. If we prevail on summary judgment. That's right, Your Honor. Thanks. I used up a lot of your time here. We'll add a couple of minutes on rebuttal. Thank you, Your Honor. It's a very challenging case. Okay. We'll hear from Mr. Zarian now. May it please the court. Forgive me. Please proceed. Thank you, Your Honor. May it please the court. My name is John Zarian from Parsons, Bailey & Latimer, representing Pele Harmony Brands on appeal. This appeal raises the question of whether or not Judge Windmill in the district court below erred in granting summary judgment with respect to the two claims that remained at the time of his order, namely trade dress and copyright infringement, and whether he erred in awarding attorney's fees under both the Lanham Act and the Copyright Act. We submit for the reasons stated in the briefs and here today that, in fact, there was no error and that his orders should, in fact, be affirmed. Since he has argued with respect to trade dress that the error is found in the discussion and analysis of functionality. As a threshold matter, since he had the burden to show non-functionality, that's a heavy burden, something addressed in traffics. There's also a presumption of functionality. The doctrine applied here is one that retains vitality in the Ninth Circuit, and that is the doctrine of aesthetic functionality. Most recently addressed, for example, in Automotive Gold, a Ninth Circuit case from 2006. The doctrine applies when goods are bought largely for their aesthetic value. And it's been applied in cases involving, for example, a distinctive blossom pattern on china or a heart-shaped candy box. In other words, it's been applied in cases like this, in cases where there's an aesthetic purpose wholly independent of any source identifying function, and that is the case here today. Can the court hear me okay? I can't. We can. You've got a little extra time because we did not turn on your clock when you started arguing, but you go right ahead. Thank you. I'll try to be efficient. Thank you, Your Honor. Ultimately, since you can prevent other companies from using ideas, which is really what is the objective here like snowmen or a cocopelli to depict the southwestern theme, then it would have a non-reputation related advantage, and that would make it functional. Those two perhaps present the best example of the breadth of the protection that is sought here by CENCI. On the copyright claim, there was evidence, direct evidence of copying, wasn't there? There was not, Your Honor, and I think it's a struggle. I know you've got a client, you've got to argue in favor of the client, but your client sends a picture of their product to your manufacturer and inferentially or even directly tells them, make it look like this one, and that's not direct evidence of copying? The evidence is that that was sent for a prototype, and that was on one product only, and that was, as I recall, Your Honor, on cocopelli and also Tribeca, which is not the subject of the copy. And ultimately, your client's product was Harmony, right? Yes, Your Honor. And then at some point, an executive of your company becomes so concerned that these two things looked so much alike that they actually asked them to make some changes. And that's not direct evidence of copying? All the witnesses testified changes were made so that they didn't look alike. In other words, the intent was to make them look different, and the reason these were compared was to make them look different, and that's ultimately the fallacy with you. Are you a football fan? I am, Your Honor. Okay. I always enjoy it when the crowd noise, like at CenturyLink Field here in Seattle, gets really loud, and it's typically a defensive lineman, and the referee has warned people if it gets any louder, they're going to stop the game or impose a penalty or something. And you'll see a defensive lineman raising one arm, telling the crowd to quiet down, but with his other arm telling them to keep up the noise. And you'll forgive me if that doesn't remind me of that. I understand the analogy, Your Honor. And I don't think that perhaps fairly states or is a comparison that fits these facts, because the facts here and the best evidence that was submitted refers to things like inspiration, ideas, origins, to look at the shapes, and maybe that's the simple direction in which the company wants to go. There's a reference to something being based a bit like something else. The only evidence that's direct at all is the one instance that the Court has cited about a sample being sent over. Does your brief cite Printex Industries versus Aeropostal? I believe it does. Written by my colleague, Judge Gould. And it says that a party need not copy a plaintiff's work in its entirety to infringe the work, but it's enough that the defendant appropriated a substantial portion of the plaintiff's work. Isn't there a question of fact as to that? As the Court found in this case, no, Your Honor. And what's required for direct copying is, of course, a virtual identity of something. And that's simply not the case here. If we look at the examples, and these are depicted in the brief, submitted in the opening brief by the appellant, these two Cocopellis are entirely different. The only thing they have in common is that they're Cocopellis. The two snowmen on our product are different from the single snowmen on Sensi's. The only thing they have in common is that they're snowmen. It's instructive to look at Cocopelli versus Ancient. The shape of those warmers is different. The exact color is different. The color of the lid is different. The number and position of the holes is different. The texture is different. And the exact depiction is completely different. I'm specifically referring to Cocopelli versus Ancient. And Ancient and Harmony are the same product? Well, Harmony is the company, Your Honor. Yeah, but Ancient is the product that depicts Cocopelli. The comparison of Cocopelli to Ancient, didn't even the district court say they had a similar color and look? The color is the same in the sense that any old-looking pottery is that color or a shade of that color. And so that is, if we're looking for similarities, that is a degree of similarity. And look? Well, to the extent there's a Cocopelli depicted on something that looks like old pottery, yes, that would be a similarity. But, again, Your Honor, to draw on a case earlier today, the first person to put an eagle on a T-shirt cannot exclude all future depictions of eagles on any T-shirt. And that's what they're trying to do here. Don't they have a similar sort of leathery feel? Well, again, T-shirts would be made of cotton. T-shirts would have holes for arms and a head. They would look the same shape. Well, I think that's the product that was actually involved in the Printex Industries case was patterns of flowers and bouquets on T-shirts, wasn't it? But ultimately what needs to be found is either virtual identity or at the very minimum substantial similarity between the depictions themselves. It's not enough here to point to an idea, which is all they've done. It's impossible, virtually impossible, to depict a winter theme without a snowman. And these are completely different depictions. It's very difficult to depict a southwestern theme without Cocopelli. That is the preferred depiction. And yet that is something that has been used. A Google search would pull up millions of images, literally millions of images of Cocopelli, all recognizable as Cocopelli, all different and many of them more similar, far more similar than these two depictions. And so, Your Honor, what has happened here is that Sensi is now through the theory of copyright but also through trade dress looking to protect nothing more than ideas. And to the extent there was any copying, it was a copying of an idea. In other words, if someone sees a camouflage pattern or a star or a patriotic theme and decides to run with that and come up with a different depiction, that is authorized and indeed encouraged under our intellectual property laws. And nothing more than that happened here. There's no evidence of tracing or copying. There are cases that this Court has handed down where there's entire phrases, the North case, lifted and substantial portions are copied verbatim, word for word, from one work to another. That didn't happen here. At best, what we have is a copying of an idea, not a particular expression of it. And that is permitted under the cases. The analysis of trade dress ultimately doesn't necessarily need to turn. We submit on simply the application of the aesthetic functionality analysis because, as was discussed to some extent in the Court's order on attorney's fees, there were other elements that were wholly not made out and as to which there was really no reasonable basis to try to make out an element and there was no evidence of it. There was no evidence of any source identifying purpose or any secondary meaning. None was even submitted. There was no evidence of likelihood of confusion, nor really could there be. As was pointed out, these were sold differently through very different channels. Sensi sells 100% of its product to its own consultants who then have some multilevel marketing arrangement that then sell through these home parties, whereas substantially all of the products sold by Harmony, my client, is sold at retail through hundreds of stores like Walgreen's and others. They're packaged differently. The evidence is that they're branded differently. They're presented differently. There is literally no likelihood of confusion. Your opponent argues that the intrinsic test is a factual test which always must go to the jury. What's your response? The cases do suggest that the intrinsic test is generally reserved for the jury. As we've argued, though, in this case, we believe that the extrinsic test is all that was applied. Admittedly, there was, I think, a misnomer made in the order and it was probably not referred to correctly. Doesn't the intrinsic test look at the total concept, look, the feel, et cetera? It does, Your Honor. And that's why it's generally a jury question? I think that's fair to say, yes, absolutely, Your Honor. But in this case, Judge Windmill didn't do that. What was conducted was the analytical type of parsing out of elements and comparison that is part and parcel of the extrinsic test, and that's all that was done. Judge Windmill went through many different elements and compared them. He did so for each of the products. And there was no analysis of a total look and feel, no opinion rendered as to a total look and feel at any point. And the products were never looked at as a whole. So we submit that the analysis was appropriate, and it went through the extrinsic test only and appropriately found that here there was no substantial similarity. And it was appropriate in that regard to factor out and filter certain elements, as the Court did in this case. Your Honor, we submit that because the issues on trade dress and copyright were correctly decided on the grounds that there was no – there was a static functionality here with respect to trade dress and no evidence of direct copying and no direct or substantial similarity with respect to copyright infringement. The Court correctly decided the motion for summary judgment. And I think it's, again, simply the case that what is being done here, and the Rimport's case was instructed, the earlier case that was filed by this same plaintiff, was really an example of overreaching and maybe now a pattern. And this also informed, to some extent, the award of attorney's fees. What we have is a – So it's your position that the Lanham-McPhee claim meets that act's definition of exceptional, which is groundless, unreasonable, vexatious, or brought in bad faith? Yes, and I believe the Court's opinion was predicated on groundless and unreasonable in particular. The Court did not make a finding below of bad faith, nor is one required. That seems to be disjunctive. Yes, Your Honor. Your Honor, in this case, there was the prior Rimport's opinion, in which Judge Lodge looked at very similar arguments and trade dress claims made by Sensi against another competitor. And, again, these two cases together form a pattern of a dominant player trying to exclude, with novel theories of intellectual property,  And in that case, Judge Lodge found specifically that there was no likelihood of confusion between another company, Rimport's, situated exactly as we are through retail channels, selling through retail channels, and Sensi. And also that there was no secondary meaning in that case and no source-identifying purpose to the trade dress that was claimed there, which was similar, indeed identical almost, to the trade dress claimed here. That's the case here, and that's one of the reasons I think Judge Windmill, in his order, takes a look and says Sensi knew or should have known that this was groundless, that it was unreasonable at that point in time, nevertheless came to court and made substantially the same arguments here. And for that reason, we think the award of attorney's fees is appropriate because the arguments were groundless, they were unreasonable. And we've submitted some supplemental briefing, if it pleases the Court, with respect to the two recent U.S. Supreme Court decisions, Octane Fitness and Highmark. And we believe that perhaps affects the patent cases. Yes, Your Honor. We think that informs and perhaps instructs the standard of review because the standard of review is abuse of discretion except for. . . It's sort of nice to see another circuit have a bad year. I understand, Your Honor. 0 and 5, if your specialty is patent, it's not a good result. It was a tough year for the Federal Circuit. I think we've got your argument. Do you have anything else? No, Your Honor. Thank you. We do submit then on the supplemental. . . I have one question on the attorney fees. So we have a Ninth Circuit precedent that says on exceptional, whether there's an exceptional case, we look at that de novo rather than abuse of discretion. So even though the Supreme Court's recent patent cases look in a different direction and apply abuse of discretion, for our panel to apply that standard, we would have to conclude that the prior Ninth Circuit precedent is clearly irreconcilable with those Supreme Court cases under our Miller v. Gamming test. So, Emmy, do you have any position on that? Because you mentioned abuse of discretion. It seems to me we can't look at that on whether the case is exceptional. Well, the standard on copyright surely would be abuse of discretion. Right, that one would be, but on the exceptional. . . Yes, and on application of the Landmax standard, perhaps, of course, it would also be abuse of discretion. But we recognize historically that that's not been the standard for the determination of exceptional case. We do think, Your Honor, that Octane Fitness and Highmark do change that. I mean, the analysis there is an identical statutory scheme that was predicated on trademark and copyright on some cases. And the Court announced there that trial courts, district courts, should have much more discretion in all aspects of attorney's fees determination, including the determination of exceptional case. And we think that applies with equal force and equal weight to the trademark determination. Thank you. Okay, Judge Noonan, do you have any questions? I do not, thank you. Okay. Thank you very much. Thank you. We'll hear from appellant on rebuttal, please. Your Honor, thank you. I wish just to reiterate that since he claims no exclusive rights to a cocapella, a Hopi fertility deity, we claim no exclusive rights to the use of snowmen, not even to the use of a snowman on a wax woman. And I want to make that clear. We are not claiming a right to those themes. But the discussion this morning about the similarities and differences in specifically the cocapella warmer point to the fact that this is a question of fact and should be decided by a jury. I invite the court to take a step back and look at this case as I do from a 30,000-foot view. Sensi has invested untold hours and over $100 million in designing, protecting, and marketing its products. They were novel. They had not been on the market before. The market loved them. They snatched them up by the millions. Harmony Brands did no similar effort. They used, in the district court's own words, at the very least, they used Sensi products as the starting point and even more egregiously advertised that buyers should buy their products because of that copy. Under those circumstances, there was nothing Sensi could have done except sit back and allow it to continue or to seek the aid of the court in protecting its rights. So even if the district court, as it has here, decides that Sensi's rights are not infringed, and even should this court agree, there simply is no way to find that Sensi's case was groundless, was vexatious, was unreasonable under either the exceptional case doctrine or under copyright law as the court has done here. Let me ask of you to address this one final point on the attorney fee issue. Assuming that you don't prevail on infringement and that the summary judgment stands, is the standard as to what is an exceptional case to be reviewed by us de novo, which I thought under our Ninth Circuit precedent sum up opinion that maybe the Judge McEwen had written, or does the Supreme Court's, do their patent cases change that? Your Honor, the patent cases from the Supreme Court do not change this Court's precedent, which is a de novo rule of exceptional cases. It would require this Court to reverse a long history of case law. I do not think that the Supreme Court cases, certainly not directly and neither by inference, do they require that reversal. Okay. Thank you, counsel. Thank you, Your Honor. Judge Noonan, do you have any further questions? Thank you. I don't. Okay. Well, Judge Hawkins, any questions? Nothing further. I think we've probably covered the ground. We appreciate the excellent arguments by counsel, both appellant and appellee, and we also appreciate your travel from Idaho to visit with us today. We always get great arguments from Idaho lawyers and we like it. Okay.
judges: NOONAN, HAWKINS, GOULD